IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIA LOVELL and KIMBERLY SULLIVAN, on behalf of themselves and all similarly situated class members,<br><br>      Plaintiffs,<br><br>  vs.<br><br>UNITED AIRLINES, INC., JACQUELYN SHOOK, and BERNADETTE ERWIN,<br><br>      Defendants. | Civ. No. 09-00146 ACK-LEK |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR REMAND TO STATE COURT**

**BACKGROUND**[1/]

On March 18, 2009, Plaintiffs Maria Lovell and Kimberly Sullivan filed a class action complaint ("Complaint" or "Compl.") in the Circuit Court for the First Circuit of the State of Hawai'i against Defendants United Airlines, Inc. ("United"), Jacquelyn Shook, and Bernadette Erwin.  The Complaint alleges that on April 1, 2003, United instituted a policy and practice requiring all part-time employees to work at least thirty hours/five days per week ("Policy").  Compl. ¶ 14.  Plaintiffs

---

[1/] The facts in this Order are recited for the limited purpose of deciding the motion for a remand and shall not be construed as findings of fact upon which the parties may rely in future proceedings in this case.

were part-time employees with disabilities who worked as reservation and sales representatives at United's reservation center in Honolulu, Hawai'i.  Id. ¶¶ 3-4, 12, 28.  They indicated to United that they could not work thirty hours/five days per week.  Id. ¶¶ 15, 30.  Shook and Erwin were employed with United as supervisors and took part in the implementation of the Policy against Plaintiffs.  Id. ¶¶ 26, 35.  Unable to comply with the Policy, Lovell retired "involuntarily" on April 3, 2003, and Sullivan's employment was terminated on May 26, 2008.  Id. ¶¶ 16, 32.  Plaintiffs claim that United's Policy violates Hawai'i Revised Statutes ("HRS") § 378-2 in Count I of the Complaint and that it offends the express public policy of the State of Hawai'i in Count II.  Id. ¶¶ 47, 55.  They assert that Shook and Erwin acted as United's agents and aided and abetted in the implementation of the Policy, in contravention of the statute and state public policy.  Id. ¶¶ 26, 35.  Plaintiffs seek to advance these claims on behalf of themselves, as well as all others similarly situated.  Id. ¶ 38.[2/]

---

[2/] In addition, the Complaint alleges that Lovell was issued a right-to-sue letter by the Hawai'i Civil Rights Commission. Compl. ¶ 22.  On August 3, 2005, United offered to reinstate Lovell to active employment and to accommodate her disability by allowing her to work 20 hours per week.  Id. ¶ 23.  However, United refused to rescind its Policy, which Lovell understood was still in effect and being applied to hundreds of disabled United employees.  Id.  Lovell rejected the offer because United did nothing to alleviate the effects of its alleged discrimination against her disabled former co-workers.  Id. ¶ 24.  Plaintiffs
(continued...)

On April 6, 2009, Defendants removed the case to this Court. They assert that the Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), which is codified in relevant part at 28 U.S.C. § 1332(d)(2). They further claim, in the alternative, that the Court has diversity jurisdiction because, although Plaintiffs and Defendants Shook and Erwin are all citizens of the State of Hawaiʻi, Shook and Erwin were fraudulently joined. On April 8, 2009, Plaintiffs filed a motion for a remand to state court. On April 24, 2009, Defendants filed an opposition ("Defs.' Opp'n"). On May 5, 2009, Plaintiffs filed a reply. On June 3, 2009, with leave of Court, Defendants filed a surreply.

On August 18, 2009, Magistrate Judge Leslie E. Kobayashi issued a findings and recommendation to deny Plaintiffs' motion for a remand ("8/18/09 F&R"). She concluded that Plaintiffs had fraudulently joined Shook and Erwin, as no actionable claim was stated against those Defendants. 8/18/09 F&R 7-11. She therefore determined that Shook's and Erwin's citizenship should not be considered for purposes of determining diversity. Id. at 7-11. She found that the citizenship of the

---

    [2]/(...continued)
claim that United retaliated against Lovell for her opposition to its Policy when it demanded that she waive her claims against the carrier to stop its allegedly unlawful discrimination and refused to reinstate her without the condition that she do so, knowing that she would not accept that condition to re-employment and forcing her to take unwanted retirement as a result. Id.

remaining opposing parties was diverse, as Plaintiffs are citizens of the State of Hawai'i and United is a citizen of the State of Illinois.  <u>Id.</u> at 6-7.  She further determined that the amount in controversy exceeds $75,000.  <u>Id.</u> at 6.  Accordingly, Judge Kobayashi found that the Court has diversity jurisdiction and recommended that Plaintiffs' motion for a remand be denied.  <u>Id.</u> at 12.  Because she found the Court has diversity jurisdiction, Judge Kobayashi declined to address whether the Court has jurisdiction under CAFA.  <u>Id.</u> at 11-12.

On August 28, 2009, Plaintiffs filed an objection to Judge Kobayashi's findings and recommendation ("Pls.' Obj.").  On September 11, 2009, Defendants filed a response to the objection ("Defs.' Resp.").

## **STANDARD OF REVIEW**

A district court reviews de novo those portions of a magistrate judge's findings and recommendation to which an objection is made and may accept, reject, or modify, in whole or in part, the findings and recommendation made by the magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Rule 74.2 of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules").  The district court may accept those portions of the findings and recommendation that are not objected to if it is satisfied that there is no clear error on the face of the record.  <u>Stow v.</u>

Murashige, 288 F. Supp. 2d 1122, 1127 (D. Haw. 2003).  The district court may receive further evidence or recommit the matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).  It may also consider the record developed before the magistrate judge.  Local Rule 74.2.  The district court must arrive at its own independent conclusions about those portions of the magistrate judge's report to which objections are made, but a de novo hearing is not required.  United States v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989).  The Court finds that a hearing in this matter is neither necessary nor appropriate.  See Local Rule 7.2(d).

## **DISCUSSION**

Plaintiffs contend that the Court does not have diversity jurisdiction.  The basis for such jurisdiction is set forth in 28 U.S.C. § 1332, which states in relevant part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between . . .[c]itizens of different States . . . ."  28 U.S.C. § 1332(a)(1).  Plaintiffs do not dispute Judge Kobayashi's determination that the amount in controversy exceeds $75,000.  They instead challenge her finding of diversity of citizenship.  Pls.' Obj. 14-23.  Judge Kobayashi specifically concluded that Shook and Erwin had been fraudulently joined in this action and

that their presence should therefore not be considered in evaluating whether there is diversity of citizenship. 8/18/09 F&R 6-11.  In the absence of those Defendants, both of whom are citizens of the State of Hawai'i, complete diversity exists, as Plaintiffs are citizens of the State of Hawai'i, whereas United is a citizen of the State of Illinois.  Id. at 6-7.  The critical question is thus whether Shook and Erwin were fraudulently joined.

"Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'"  Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).  "Fraudulent joinder must be proven by clear and convincing evidence," Hamilton Materials Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007) (citing Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (5th Cir. 1998)), as "there is a general presumption against fraudulent joinder," id. (citing Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42 (5th Cir. 1998)).

In evaluating the issue of fraudulent joinder, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking

initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc). The removing defendant must show "that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Pampillonia, 138 F.3d at 461. All ambiguities in state law must be resolved in the plaintiff's favor. Dodson, 951 F.2d at 42. In addition to examining the complaint, "the court may consider the plaintiff's factual assertions (whether in a brief, an affidavit, or in some other form), that elaborate on the allegations of the complaint, so long as those factual assertions are not inconsistent with the allegations of the complaint." Conk v. Richards & O'Neil, LLP, 77 F. Supp. 2d 956, 961 (S.D. Ind. 1999); Griggs v. State Farm Lloyds, 181 F.3d 694, 700 (5th Cir. 1999) ("Post-removal filings may not be considered . . . when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court.").[3/] "[T]he plaintiff

---

[3/] If the plaintiff successfully states an actionable claim in his complaint, he may nevertheless have "misstated or omitted discrete facts that would determine the propriety of joinder." Smallwood, 385 F.3d at 573. The defendant is therefore "'entitled to present the facts showing the joinder to be fraudulent.'" Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998) (quoting McCabe, 811 F.2d at 1339). In such a case, "the district court may, in its discretion, pierce the
(continued...)

has at least as much latitude in responding to . . . a claim of fraudulent joinder as he would have in responding to a motion to dismiss for failure to state a claim." Conk, 77 F. Supp. 2d at 961.[4/]

With these principles in mind, the Court will now evaluate the validity of Plaintiffs' statutory and public policy claims against Shook and Erwin. The statutory claim arises under

---

[3/](...continued)
pleadings and conduct a summary inquiry," Smallwood, 385 F.3d at 573, which involves the consideration of "'summary judgment-type evidence such as affidavits and deposition testimony,'" Morris, 236 F.3d at 1068 (quoting Cavallini, 44 F.3d at 263).

[4/] Defendants contend that a plaintiff may not rely on evidence outside the complaint to cure his failure to plead a claim against an in-state defendant, citing Ritchey. Defs.' Resp. 8-9. In that case, the Ninth Circuit explained that, "[i]n deciding whether a cause of action is stated we have declared that we will 'look only to a plaintiff's pleadings to determine removability.'" Ritchey, 139 F.3d at 1318 (quoting Gould v. Mut. Life Ins. Co. of New York, 790 F.2d 769, 773 (9th Cir. 1986)). However, the court went on to note that, "[w]here fraudulent joinder is an issue, we will go somewhat further." Id. The court then addressed the situation in which the removing defendant seeks to pierce the pleadings. See id.; see also supra note 2. Thus, the Ninth Circuit's limited review on the issue of removability applies to cases in which fraudulent joinder is not at issue. On top of that, the Ritchey case does not mention, much less address, the situation in which a plaintiff seeks to cure defects in his claim against an in-state defendant with supplementary evidence. In view of the decisions cited above, namely, Griggs and Conk, the Court finds it proper to permit the plaintiff to do so. In each case, the plaintiff submitted supplementary evidence in response to the claim of fraudulent joinder before the district court ruled on the plaintiff's remand motion. See Griggs, 181 F.3d at 699; Conk, 77 F. Supp. 2d at 958. The Plaintiffs in this case have similarly provided such evidence in their filings, and the Court will consider the evidence in deciding their motion for a remand.

HRS § 378-2, which provides in relevant part that it is an "unlawful discriminatory practice," "[b]ecause of . . . disability," "[f]or any employer . . . to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment."  HRS § 378-2(1)(A).  The word "employer" is defined as "any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States."  Id. § 378-1.  The statute also declares that it is an "unlawful discriminatory practice" "[f]or any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so."  Id. § 378-2(3).

       The Complaint asserts that, through the Policy, United has discriminated against Plaintiffs on the basis of their disabilities, in violation of HRS § 378-2.  E.g., Compl. ¶ 47. It further alleges that Shook and Erwin acted as United's agents and aided and abetted in the implementation of the Policy.  Id. ¶¶ 26, 35, 52.  There is a difference of opinion in this District as to whether the "agent" of an employer can be held liable individually under HRS § 378-2(1)(A) for committing a discriminatory employment practice.  See, e.g., Lum v. Kauai County Council, Civ. No. 06-00068 SOM/LEK, 2007 U.S. Dist. LEXIS

82740, at *8-*10, *22 (D. Haw. Dec. 14, 2007) (Mollway, J.) (collecting cases and holding that an "agent" may not be held liable under HRS § 378-2(1)(A)); Hale v. Haw. Publs., Inc., 468 F. Supp. 2d 1210, 1227-28 (D. Haw. 2006) (Kay, J.) (concluding to the contrary).  Even resolving this ambiguity as to the interpretation of state law in Plaintiffs' favor, see Dodson, 951 F.2d at 42, it is unclear as to what Shook and Erwin did to discriminate against Plaintiffs, apart from allegedly aiding and abetting in the implementation of the Policy.  There is simply no suggestion in the Complaint or the supplementary evidence Plaintiffs have submitted that either Defendant committed an independent discriminatory act.

　　　　The question becomes whether Plaintiffs have sufficiently stated a claim for aiding and abetting discrimination against Shook or Erwin under HRS § 378-2(3).  The statute does not define the terms "aid" and "abet."  Nor does the legislative history.  Nevertheless, courts construing similar statutes have looked to the Restatement (Second) of Torts § 876(b) (1979) for guidance in defining the terms, e.g., Ellison v. Plumbers & Steam Fitters Union Local 375, 118 P.3d 1070, 1077 (Alaska 2005), because that section "sets forth the standard for civil aiding and abetting liability," Failla v. City of Passaic,

146 F.3d 149, 158 (3d Cir. 1998).[5] It provides that, "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . ." Restatement (Second) of Torts § 876(b). The Court agrees with this line of authority and therefore concludes that, under HRS § 378-2(3), a person aids and abets an unlawful discriminatory practice of another if he knows that the practice constitutes a breach of the other's duty and if he provides substantial assistance or encouragement with respect to the practice.

     In the case at bar, Judge Kobayashi accepted Defendants' contention that Plaintiffs failed to state a viable "aiding and abetting" claim against Shook and Erwin insofar as the Complaint does not identify any actions that those Defendants took to aid and abet the allegedly discriminatory Policy.  See 8/18/09 F&R 7-8; Defs.' Opp'n 10.  Plaintiffs maintain that Judge Kobayashi erred in holding them to a heightened pleading standard.  Pls.' Obj. 15-16.  While the Complaint does assert

---

[5] The Hawai'i Supreme Court has repeatedly relied on the Restatement (Second) of Tort in other contexts.  See Hac v. Univ. of Hawai'i, 102 Hawai'i 92, 106, 73 P.3d 46, 60 (2003) (intentional infliction of emotional distress); Maguire v. Hilton Hotels Corp., 79 Hawai'i 110, 113, 899 P.2d 393, 396 (1995) (special relationships); Chun v. Park, 51 Haw. 462, 468, 462 P.2d 905, 909 (1969) (negligent misrepresentation).

that Shook and Erwin assisted United in the implementation of the Policy, it does not contain any factual allegations indicating that such assistance was in any way "substantial."  See Compl. ¶¶ 6-7, 26, 35, 52; cf. Marsland v. Pang, 5 Haw. App. 463, 475, 701 P.2d 175, 186 (1985) ("To satisfy Rule 8(a)(1)[ of the Hawai'i Rules of Civil Procedure], "the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 121-23 (1969))).  The character of a defendant's involvement is critical because "[t]he assistance of or participation by the defendant may be so slight that he is not liable for the act of the other."  Restatement (Second) of Torts § 876 cmt. d.  "In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered." Id.  Because the Complaint does not indicate that Shook and Erwin's participation in the implementation of the Policy was "substantial," the Court agrees with Judge Kobayashi's finding

that Complaint does not state an actionable "aiding and abetting" claim against Shook and Erwin.  See 8/18/09 F&R 8.

Plaintiffs attempt to cure the defect in their Complaint with supplementary evidence.  The evidence indicates that Shook was the regional manager of United's reservations sales and service center in Honolulu and that she supervised Erwin, who was also a manager in the department.  Pls.' Obj., Ex. 6 at 8:20-21, 9:1-5, 12:12-22, 52:8-9 (Erwin's Dep.), Ex. 9 at 217:16-22, 218:16-23 (Dep. of Anthony Bedalov, director of United's reservations sales and operations department).  United instructed the managers to speak with each affected employee about the Policy and to give the employee a letter.  Pls.' Obj., Ex. 6 at 56:1-3 (Erwin's Dep.).  The letter detailed the Policy and requested that the employee have his or her doctor provide current medical information to United's medical department in California so that the department could assess the employee's medical restrictions.  Id.; Pls.' Obj., Ex. 8 at 1-2 (letters from Erwin to Lovell and Sullivan).  In the event that United could not meet an accommodation that an employee requested, a manager would hold a "Reasonable Accommodation Process" ("RAP") session to determine what reasonable accommodations were possible in view of United's economic situation.  Pls.' Obj., Ex. 6 at 56:6-8 (Erwin's Dep.), Ex. 5 at 1 (e-mail to Shook regarding

the Policy), Ex. 8 at 1-2 (letters from Erwin to Lovell and Sullivan).

During the session, the manager would review current work restriction information against current schedule requirements.  Id., Ex. 5 at 1 (e-mail to Shook regarding the Policy).  The manager would also tell the employee that he or she would have a reasonable period to provide any additional information that might help United make a determination as to his or her status.  Id. at 2.  In this case, pursuant to United's instructions, Erwin provided Lovell and Sullivan with the required letters and held a RAP session with Lovell to discuss whether she could meet the 30-hour requirement under the Policy.  Pls.' Obj., Ex. 6 at 67:18-69:19 (Erwin's Dep.), Ex. 8 at 1-2 (letters from Erwin to Lovell and Sullivan).  In short, the evidence that Plaintiffs have put forth suggests that Shook and Erwin assisted United with the Policy by preparing and implementing the process by which United would notify its employees of the Policy and by ascertaining whether the employees could meet the Policy's requirements.  See 8/18/09 F&R 9.

Such assistance is not "substantial."  The Restatement provides the following example to illustrate the meaning of the term:

> A is employed by B to carry messages to B's workmen.  B directs A to tell B's workmen to tear down a fence that B believes to be on his own land but that in fact, as A knows, is

14

>     on the land of C.  A delivers the message and
>     the workmen tear down the fence.  Since A was
>     a servant used merely as a means of
>     communication, his assistance is so slight
>     that he is not liable to C.

Restatement (Second) of Torts § 876 illus. 9.  Similarly, in the present matter, Shook and Erwin served to notify Plaintiffs of the Policy on United's behalf and to determine whether Plaintiffs could meet the Policy's requirements.  See Pls.' Obj. 7-10; 8/18/09 F&R 8-9.  Their role was limited to serving as United's means of communication with Plaintiffs.  Without more, it simply cannot be said that Shook and Erwin substantially assisted United with respect to the Policy.  See 8/18/09 F&R 12 ("The Court is not convinced that Plaintiffs will be able to hang liability on Defendants Shook and Erwin under [HRS §] 378-2(3) for steps they took to notify Plaintiffs of the minimum work schedule set by [United].").  Moreover, Plaintiffs have not asserted that Shook or Erwin knew that the Policy constituted a breach of the United's duty under HRS § 378-2.  Their attempt to shoot the messenger is off the mark.  Thus, it appears that Plaintiffs have not stated an actionable "aiding and abetting" claim against Shook or Erwin under HRS § 378-2.  See McCabe, 811 F.2d at 1339 (holding that a former employee had failed to state viable claims against two managers for, among other things, intentional infliction of emotional distress, insofar as the employee did not

sufficiently allege outrageous conduct, and that those defendants had thus been fraudulently joined).

The remaining claim against those Defendants is that they violated state public policy in assisting United with the Policy. Compl. ¶ 56. Judge Kobayashi rejected this claim as a matter of law, reasoning that "a party may not bring a public policy claim '[w]here the policy sought to be vindicated is already embodied in a statute providing its own remedy for its violation,'" and that "the policy Plaintiffs seek to vindicate—that it is unlawful to discriminate against Plaintiffs on the basis of their disability—is wholly embodied in [HRS §] 378-2 which clearly provides a remedy to Plaintiffs for the violation of that policy." 8/18/09 F&R 10 (quoting Ross v. Stouffer Hotel Co., 76 Hawai'i 454, 464, 879 P.2d 1037, 1047 (1994)). Plaintiffs state that they may not have a public policy claim against Shook and Erwin if, and only if, a court first finds that they have claims against those Defendants under HRS § 378-2, such that they may vindicate the alleged violations of Hawai'i public policy. Pls.' Obj. 18. They insist that it would be inappropriate to exclude their public policy claim until their right to pursue statutory claims has been confirmed. Id.

But the question under Ross is not whether Plaintiffs have an actionable claim under the statute, but rather whether the statute provides a remedy for the type of claim that they

16

assert.  See 76 Hawai'i at 464, 879 P.2d at 1047.  HRS § 378-2 recognizes claims in the employment context for discrimination on the basis of disability and for aiding and abetting such discrimination.  HRS §§ 378-2(1), (3).  Plaintiffs' public policy claim seeks redress for the very same wrongs.  See Compl. ¶ 56.  Given that the interest sought to be vindicated by Plaintiffs' public policy claim is already embodied in HRS § 378-2, it would be "unnecessary and unwise to permit a judicially created cause of action."  See Ross, 76 Hawai'i at 464, 879 P.2d at 1047.  Their public policy claim thus fails as a matter of law.

       Accordingly, the Court finds that Defendants have shown, by clear and convincing evidence, that Plaintiffs obviously failed to state a viable cause of action against Shook or Erwin.  See Morris, 236 F.3d at 1067.  As such, those two Defendants have been fraudulently joined and their presence will not be considered for purposes of evaluating diversity of citizenship.  See id.  In their absence, there is complete diversity of citizenship since Plaintiffs are citizens of the State of Hawai'i and United is a citizen of the State of Illinois.  8/18/09 F&R 6-7.  In addition, it is undisputed that the amount in controversy exceeds $75,000.  Id. at 6.  The Court thus has diversity jurisdiction under 28 U.S.C. § 1332.  Consequently, it need not reach the question of whether it has jurisdiction under CAFA.

**CONCLUSION**

In light of the foregoing, the Court adopts Judge Kobayashi's findings and recommendation to deny Plaintiffs' motion for a remand.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, October 2, 2009.



_____
Alan C. Kay
Sr. United States District Judge

Lovell v. United Airlines, Inc., Civ. No. 09-00146 ACK-LEK:  Order Adopting the Magistrate Judge's Findings and Recommendation to Deny Plaintiffs' Motion for Remand to State Court