IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARIA LOVELL and KIMBERLY SULLIVAN, on behalf of themselves and all similarly situated class members, | ) ) ) ) | CIVIL NO. 09-00146 ACK-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED AIRLINES, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING RESOLUTION OF EARLIER-FILED FEDERAL CLASS ACTION**

Before the Court is Defendants United Airlines, Inc. ("United"), Jacquelyn Shook, and Bernadette Erwin's (collectively "Defendants") Motion to Stay Proceedings Pending Resolution of Earlier-Filed Federal Class Action ("Motion"), filed on February 18, 2010.  Plaintiffs Maria Lovell and Kimberly Sullivan, on behalf of themselves and all similarly situated class members (collectively "Plaintiffs") filed their memorandum in opposition on March 16, 2010, and Defendants filed their reply on March 22, 2010.  Plaintiffs' counsel filed supplemental declarations with exhibits on April 1, 2010 and April 8, 2010.  This matter came on for hearing on April 5, 2010. Appearing on behalf of Defendants were John Murray, Esq., and Jeffrey Harris, Esq., and appearing on behalf of Plaintiffs was

Carl Varady, Esq.  After careful consideration of the Motion,
supporting and opposing memoranda, and the arguments of counsel,
Defendants' Motion is HEREBY GRANTED for the reasons set forth
below.

**BACKGROUND**

Plaintiffs filed the instant class action on March 18,
2010 in state court.[1]  Maria Lovell and Kimberly Sullivan were
employed by United as reservation and sales representatives
("RSSRs") at United's Honolulu reservation center.  [Complaint at
¶¶ 3-4.]  The Complaint alleges that, at all times relevant to
the instant case, Jacquelyn Shook and Bernadette Erwin were
supervisory employees and agents of United.  [Id. at ¶¶ 7-8.]

Lovell began working for United on May 20, 1976.  In
1983, she was diagnosed with myasthenia gravis, a disease which
limits one or more of her major life activities.  At Lovell's
request, United accommodated her disability by allowing her a

_____

[1] Plaintiffs have not yet moved for class certification.
The putative class consists of:

> All persons employed by [United] during the period
> beginning October 5, 2002 . . . , through the
> present, who have or had a physical or mental
> impairment that substantially limits one or more
> major life activity, who could otherwise perform
> the essential functions of their jobs with
> reasonable accommodation, in the form of modified
> work schedule, but who were refused such
> accommodation by [United] as a result of its
> policy and practice of requiring all employees to
> work at least thirty (30) hours and five (5) days
> per week.

[Complaint at ¶ 38.]

modified work schedule.  Instead of working forty hours per week as she had done previously, Lovell was allowed to work Monday, Tuesday, Thursday, and Friday from 8:00 a.m. to 12:00 p.m.  [Id. at ¶¶ 11-13.]

In March 2003, United informed Lovell and other similarly situated employees that on April 1, 2003 it would begin enforcing a formal policy requiring, *inter alia*, that all part-time employees work at least thirty hours per week and five days per week ("the Policy").  On or about April 1, 2003, United demanded that Lovell comply with the Policy.  When Lovell indicated that she could not do so because of her disability, United forced her to choose between forced retirement and unpaid leave.  Lovell chose involuntary retirement and her last day of work for United was April 3, 2003.  Lovell would have continued to work at United if she had been allowed a modified work schedule to accommodate her disability.  She alleges that the accommodation would not have caused United significant difficulty or expense.  [Id. at ¶¶ 14-19.]

Lovell filed a timely disability discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  The EEOC referred the charge to the Hawai`i Civil Rights Commission ("HCRC"), which issued her a right to sue letter.  [Id. at ¶¶ 21-22.]

On or about August 3, 2005, United offered to reinstate

Lovell to active employment and to allow her to work twenty hours per week.  United, however, refused to rescind the Policy. Lovell rejected the offer because, *inter alia*, the Policy constituted continued discrimination against her disabled co-workers.  Plaintiffs contend that United later retaliated against Lovell because of her opposition to the Policy.  [<u>Id.</u> at ¶¶ 23-25.]

Sullivan began working with United on January 14, 1991. On September 18, 2000, she suffered a back injury which limits one or more of her major life activities.  Sullivan requested and received a modified work schedule of no more than twenty hours per week as a reasonable accommodation of her disability.  After the implementation of the Policy, United demanded that Sullivan work at least thirty hours per week and five days per week.  When Sullivan indicated that she was unable to do so, United forced her to take unpaid leave.  Her last day of work before her involuntary leave was March 17, 2005.  On March 25, 2008, United informed Sullivan that she would be terminated on May 26, 2008 because of her failure to comply with the Policy and because her three-year unpaid leave period expired.  Sullivan would have continued to work at United if she had been allowed a modified work schedule to accommodate her disability.  She alleges that the accommodation would not have caused United significant difficulty or expense.  [<u>Id.</u> at ¶¶ 27-34.]

Sullivan filed a timely disability discrimination charge with the EEOC.  The EEOC referred the charge to the HCRC. Plaintiffs allege that United retaliated against Sullivan for opposing the Policy by terminating her contemporaneously with her filing of the charge.  [Id. at ¶¶ 36-37.]

The Complaint alleges that United's conduct, including the failure to provide reasonable accommodation in the form of work schedules less than thirty hours and five days per week, violated Haw. Rev. Stat. § 378-2 and resulted in adverse employment actions against Plaintiffs ("Count I").  Plaintiffs also allege that United's unlawful conduct violated state public policy ("Count II").  They seek the following relief: class certification; injunctive relief; declaratory relief; assignment to the positions that Plaintiffs and the class members would have been in and/or adjustment of the wages and benefits they would have had if not for the Policy; general and special damages; exemplary and punitive damages; attorneys' fees and costs; prejudgment and post-judgment interest; and any other appropriate relief.

In the instant Motion, Defendants argue that this case should be stayed pending the resolution of Equal Employment Opportunity Commission v. United Airlines, Inc., Case No. C06-01407 TSZ (W.D. Wash.) ("the Seattle Action").  Defendants contend that a stay is warranted because: 1) the EEOC filed the

5

Seattle Action more than two years before Plaintiffs filed the instant case; 2) the parties and the issues in the Seattle Action are substantially similar to those in the instant case; and 3) within the next several months, the court in the Seattle Action will resolve legal issues which will likely have a material effect on this case.  For example, the court in the Seattle Action will address which individuals may be barred from relief because of United's bankruptcy discharge, and the trial in the Seattle Action will test the validity of the Policy.  Defendants argue that rulings on these and other issues in the Seattle Action will have collateral estoppel effects in the instant case and will narrow the disputed issues in the instant case.

        In the Seattle Action, the EEOC alleges, *inter alia*, that United violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), by failing to provide reasonable accommodations for RSSRs who could not work a minimum of thirty hours and five days per week.  Defendants emphasize that Lovell was one of the charging parties identified in the complaint in the Seattle Action and that Lovell and Sullivan filed a Complaint in Intervention in the Seattle Action on June 4, 2009.  Further, the class allegations in the instant case describe a group that is substantially identical to the claimants on whose behalf the EEOC brought the Seattle Action.  Although the two actions rely on different statutes, the factual allegations of United's

conduct are virtually identical and the prayers for relief are substantially identical.  Defendants state that the Seattle Action is scheduled for trial in October 2010 and they anticipate that the Seattle Action will conclude within the next eight to ten months.  [Mem. in Supp. of Motion at 5.]  In contrast, the instant case "is still in its infancy."  [Id. at 6.]  Defendants therefore contend that the instant case should be stayed until the resolution of the Seattle Action.

In their memorandum in opposition, Plaintiffs argue that Lovell and Sullivan are not parties in the Seattle Action. Although they were granted leave to intervene, no answer or motion for summary judgment was filed, and they have since filed a notice of dismissal.  The notice was immediately effective, even without a court order, and divested the Seattle court of jurisdiction over their individual claims.  According to Plaintiffs, the dismissal puts Lovell and Sullivan in the same position they would have been in if they had never filed their intervention action.

Plaintiffs also contend that the claims in the two actions are distinct.  Plaintiffs emphasize that the Hawai`i Supreme Court has ruled that the determination of what constitutes a substantial limitation of a major life activity must be determined on a case-by-case basis under Hawai`i law. The Hawai`i Supreme Court expressly declined to adopt ADA case

law holding that a physical restriction on an employee's ability to lift more than twenty-five pounds was not a limitation of a major life activity.  [Mem. in Opp. at 7 (citing <u>French v. Haw. Pizza Hut, Inc.</u>, 105 Haw. 462, 468, 99 P.3d 1046, 1053 (Haw. 2004)).]  Further, the remedies under the ADA and Hawai`i law are distinct.  Under Haw. Rev. Stat. § 372-5 and § 368-17, there is no limitation on general or punitive damages.  Punitive damages are available upon proof of gross negligence.  In contrast, the ADA limits non-economic damages to $300,000, and punitive damages are only available upon a showing of intentional discrimination with malice or reckless indifference to the plaintiff's federal rights.  Thus, Plaintiffs argue that Hawai`i law has a more liberal standard of proof and more generous remedies.  They argue that there is no basis to stay the instant case pending the resolution of the Seattle Action because they have eschewed their ADA claims to pursue their claims under Hawai`i law.

Finally, Plaintiffs argue that the EEOC is pursuing the government's claims in the Seattle Action, not the claims of individuals.  The EEOC opposed intervention by a supervisory employee from Hawai`i because it wanted to limit the claimants to RSSRs, and it opposed Lovell's and Sullivan's attempts to represent a class of RSSRs.  Plaintiffs also claim that United and the EEOC have discussed settling the Seattle Action for a nominal amount, which would not adequately compensate the

8

individual claimants, and some form of consent relief, which would not require United to admit any wrongdoing.  Further, the EEOC has excluded the individual claimants and their counsel from the settlement discussions.  The EEOC's actions prove that it is advancing different interests in the Seattle Action than Plaintiffs seek to advance in the instant case.  Plaintiffs therefore argue that they should be able to pursue their claims, irrespective of the Seattle Action.

In their reply, Defendants argue that, even though Lovell and Sullivan recently extricated themselves from the Seattle Action, they litigated the case for almost two years and the Seattle Action is still based on Lovell's charge of discrimination.  Further, the EEOC continues to assert that it is seeking relief on Lovell's and Sullivan's behalf, in addition to approximately twenty other RSSRs.  Defendants note that Plaintiffs estimate that the purported class in the instant case consists of only twenty-five individuals.  Defendants argue that the statutory language, legal standards, and burden of proof of the ADA and Haw. Rev. Stat. § 378-2 are virtually identical.  Although the damages may be different, Defendants emphasize that a stay would only postpone the proceedings in this case; Plaintiffs would still have the opportunity to litigate the portions of their claims that are distinct.  Defendants emphasize that the rule of federal comity does not require complete

identity of the issues in the two actions, and that a stay in this case would prevent duplicate, and potentially inconsistent, litigation of overlapping issues.

Defendants state that Plaintiffs' speculations about "a purported sweetheart settlement in the works between United and the EEOC is completely unfounded, utterly false, and irrelevant in any event." [Reply at 5.]  Defendants state that the EEOC's last settlement demand was $60.5 million (more than $300,000 per claimant), and there are no current plans to discuss settlement of the Seattle Action until a court-ordered mediation currently scheduled for August 2010.  [Reply at 10-11.]  Defendants also note that, until the recent withdrawal, Plaintiffs and their counsel were expected to participate in that mediation. Ultimately, however, the mere possibility of a settlement in the Seattle Action has no bearing on whether the instant case should be stayed.

On April 1, 2010, Plaintiffs filed a supplemental declaration of counsel identifying twenty-three plaintiffs/putative class members in the instant case who United disputes whether they are parties in the Seattle Action.  Thus, United cannot assert that those employees' claims are at issue in the Seattle Action.  On April 8, 2010, Plaintiffs filed a second supplemental declaration of counsel describing United's attempts to restrict their participation in discovery conducted in the

10

Seattle Action.

## DISCUSSION

### I.   Plaintiffs' Late Filing

Plaintiffs acknowledged that they filed their memorandum in opposition one day late.  Plaintiffs offered no explanation for the late filing, but they state that they waived any objection to an additional day for Defendants to file their reply, and they argued that the Court should consider the fact that "the newly adopted deadlines are for the Court's, not the parties' convenience".  [Mem. in Opp. at 2 n.1.]  Plaintiffs therefore ask the Court to extend the deadline for their memorandum in opposition and Defendants' reply by one day each.

Even if the Court construes Plaintiffs' footnote as an application for extension of time, Plaintiffs did not state "the reason for the particular extension or enlargement requested."  See Local Rule LR6.2(b).  The Court also notes that the deadlines for motions documents are not merely for the Court's "convenience".  They allow the Court to prepare for a hearing in a timely manner and to make a well reasoned decision on the pending motion.  The Court GRANTS Plaintiffs' request for an extension of time, but the CAUTIONS Plaintiffs that the Court will not grant such requests in the future unless Plaintiffs file an application for extension or a motion for enlargement pursuant to Local Rule 6.2(b).

11

## II.  <u>Stay</u>

Under the "first to file rule", a district court has the discretion to transfer, stay, or dismiss an action in the interests of efficiency and judicial economy if the case involves the same parties and issues as an earlier filed action in a different district.  See <u>Cedars-Sinai Med. Ctr. v. Shalala</u>, 125 F.3d 765, 769 (9th Cir. 1997).  "[W]hile no precise rule has evolved, the general principle is to avoid duplicative litigation, and to promote judicial efficiency." <u>Barapind v. Reno</u>, 225 F.3d 1100, 1109 (9th Cir. 2000) (citations and quotation marks omitted) (alteration in original).  The rule is "designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." <u>Church of Scientology of Cal. v. U.S. Dep't of Army</u>, 611 F.2d 738, 750 (9th Cir. 1979) (citation omitted).  The Ninth Circuit has stated that the first to file rule "should not be disregarded lightly." <u>Alltrade, Inc. v. Uniweld Prods., Inc.</u>, 946 F.2d 622, 625 (9th Cir. 1991) (citations and quotation marks omitted).  The rule, however, is not to be "mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." <u>Pacesetter Sys., Inc. v. Medtronic, Inc.</u>, 678 F.2d 93, 95 (9th Cir. 1982).

In applying the first to file rule, "a court looks at three threshold factors: (1) the chronology of the two actions;

(2) the similarity of the parties[;] and (3) the similarity of
the issues." Z-Line Designs, Inc. v. Bell'O Int'l LLC, 218
F.R.D. 663, 665 (N.D. Cal. 2003) (citing Alltrade, 946 F.2d at
625-26; Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93,
95 (9th Cir. 1982)) (some citations omitted).  Cases applying the
Alltrade factors do not require that the parties and the issues
in the two actions be identical.  See, e.g., Meints v. Regis
Corp., No. 09cv2061 WQH (CAB), 2010 WL 625338, at *2 (S.D. Cal.
Feb. 16, 2010) ("the cases and parties need not be completely
identical" (citing Pacesetter, 678 F.2d at 95; Nakash v.
Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989) (holding that
Colorado River abstention does not require "exact parallelism,"
only that the two cases are "substantially similar")));
Biotronik, Inc. v. Guidant Sales Corp., Civil No. 09-442-KI, 2009
WL 1838322, at *2 (D. Or. June 22, 2009) ("The parties and issues
need not be exactly identical; there may be additional parties
and the issues need only be 'substantially similar.'" (quoting
Barapind v. Reno, 225 F.3d 1100, 1109 (9th Cir. 2000) (issues
need not be identical); InterSearch Worldwide, Ltd. v.
InterSearch Group, Inc., 544 F. Supp. 2d 949 (N.D. Cal. 2008)
(some parties the same as in the second matter))); SASCO v.
Byers, No. C 08-5641 JF (RS), 2009 WL 1010513, at *5 (N.D. Cal.
Apr. 14, 2009) ("With respect to the similarity of the parties,
the instant action is functionally identical . . . ." (citing

13

Gen. Prods. Mach. Shop, Inc. v. Systematic Inc., No.
CV-06-99-E-BLW, 2006 WL 2051737, at *1 (D. Idaho July 20, 2006)
("The parties in the two actions need not be identical for
purposes of the first-to-file rule, but there must be similarity
or substantial overlap."))).

    **A.**    **Chronology**

       The EEOC filed the Seattle Action on September 28, 2006
and Plaintiffs filed the instant case on March 18, 2009.  The
first phase of the Seattle Action is currently set for trial in
October of this year.  In contrast, this Court will hold the Rule
16 Scheduling Conference in this case on May 14, 2010.  This
Court therefore finds that the chronology of the two actions
favors the application of the first to file rule.

    **B.**    **Similarity of the Parties**

       As noted, *supra*, the parties in two actions need not be
identical for the first to file rule to apply; the presence of
some additional parties will not defeat application of the rule.
United is the defendant in the Seattle Action, and it is the
primary defendant in the instant case.  The EEOC is the plaintiff
in the Seattle Action, but it is litigating claims on behalf of
various United employees and former employees ("EEOC Claimants").
Counsel for the EEOC informed Plaintiffs' counsel that seventeen
of the EEOC Claimants are located in Hawai`i and provided
Plaintiffs' counsel with a list of those claimants.  [Exh. 1 to

Suppl. Decl. of Carl M. Varady, filed 4/1/10 (dkt. no. 57)

("Suppl. Varady Decl.").]  United has also disclosed the names of

the individuals it believes have potentially viable claims in the

Seattle Action.  [Suppl. Varady Decl. at ¶ 4.]  Plaintiffs state

that United disputes the viability of the claims brought by the

following persons who are part of the putative class in the

instant case:

> named plaintiff Kimberly Sullivan and Leialoha
> Anderson, Carole Barnes, Yolanda Busch, Ronna
> Chiaroni, Requicha Clemons, Kathleen Cobb, Kevin
> Comaskey, Starris Dean, Jeanna Dela Cruz, Deborah
> Donovan, Pamela Dronsfield, Suzanne George, Lisa
> Goodwin, Lorene Imamura, Sheila Gumbs-Daniel,
> Rachel Kam, Ivan Montelegre, Kathy Myles, Pamela
> Olivas, Susan Quimby, Charlotte Travis, and
> Katherine Wong.

[Id. at ¶ 6.]  Plaintiffs therefore argue that these employees'

claims are not at issue in the EEOC action.  [Id. at ¶ 7.]

The fact that United disputes the validity of these

employees' claims does not necessarily mean that their claims

will be excluded from the Seattle Action; the EEOC has identified

those employees as having potentially viable claims.  Further,

Lovell and Sullivan were granted leave to intervene in the

Seattle Action.  Although they subsequently withdrew from the

case, this illustrates that Sullivan's claims could have been

litigated in the Seattle Action even though United contests the

viability of her claims.  It also appears that there are a number

of putative class members in the instant case who United

acknowledges may have potentially viable claims in the Seattle Action: Maria Lovell, Shelly Kia, Melissa Mahelona, Janie Richardson, Constance Seronio, and Linda Tsutsumi. [Id. at ¶¶ 2, 6.]

Plaintiffs also note that the putative class in the instant case is not limited to RSSRs and the EEOC Claimants in the Seattle Action are limited to RSSRs. In addition, Plaintiffs point out that the October 2010 trial in the Seattle Action is limited to the EEOC Claimants whose claims arose before September 1, 2008, and a number of the putative class members in the instant case have claims arising after that date.

This Court acknowledges that there are some differences between the parties in the instant case and the Seattle Action. As stated previously, however, the first to file rule does not require that the parties be identical. The Court FINDS that there is sufficient similarity between the parties in the instant case and the parties in the Seattle Action to warrant application of the first to file rule.

Plaintiffs also state that United objects to Plaintiffs' counsel attendance at and participation in the EEOC's depositions of United managers, including mangers from the Honolulu RSSR office, in the Seattle Action. [Second Suppl. Decl. of Carl M. Varady, filed 4/8/10 (dkt. no. 59), at ¶¶ 6, 7.] Plaintiffs therefore argue that United "cannot legitimately claim

16

that Plaintiffs in this action will have an opportunity for fair and full discovery on their claims, though truncated participation in the EEOC case." [<u>Id.</u> at ¶ 7.]

Even assuming that this is true, it does not change this Court's finding on the similarity of the parties. A full and fair opportunity to conduct discovery in the Seattle Action is not a prerequisite to a stay in the instant case. This issue will, however, be relevant to the determination of whether the rulings in the Seattle Action have issue preclusion or claim preclusion effects in the instant case. <u>See</u> <u>Aganos v. GMAC Residential Funding Corp.</u>, CV 08-00345 JMS-LEK, 2008 WL 4657828, at *4 (D. Hawai`i Oct. 22, 2008) (discussing the elements of issue preclusion and claim preclusion under Hawai`i law).

### C.   **Similarity of the Issues**

The claims in the Seattle Action are primarily based on the ADA and the claims in the instant case are primarily based on Haw. Rev. Stat. § 378-2. The Hawai`i courts have recognized that the ADA and Hawai`i disability discrimination laws are similar,[2]

----

[2] The Hawai`i Supreme Court noted that:

As to the determination of "disability," HRS § 378-1, similar to the ADA, defines disability as "the state of having a physical or mental impairment, which substantially limits one or more major life activities." <u>See</u> 42 U.S.C. § 12102(2) (defining disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual").
(continued...)

and the Hawai`i Supreme Court has expressly adopted the ADA
elements of a prima facie case as the elements of a prima facie §
378-2 case.

> The Hawai`i statutes and HAR prohibiting
> discrimination based on disability are textually
> similar to the Americans With Disabilities Act of
> 1990 (ADA), 42 U.S.C. § 12101.  Because of the
> similarities between the ADA and our own HRS
> chapter 378, we adopt the analysis for
> establishing a *prima facie* case of disability
> discrimination under HRS § 378-2 that was
> established in <u>Sutton v. United Air Lines, Inc.</u>,
> 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450
> (1999).[3]   In <u>Sutton</u>, to establish a *prima facie*

---

> [2](...continued)
> Hence, a "physical or mental impairment" is a
> disability if the impairment "substantially
> limits" a "major life activity."  HRS § 378-1.
>     . . . .
>     . . . .  Our own [Hawaii Administrative Rules
> ("HAR")] § 12-46-182(h)(1) and federal regulation
> 29 C.F.R. § 1630.2(h)(1) contain identical
> language defining " physical or mental
> impairments."  <u>See</u> 29 C.F.R. § 1630.2(h)(1); HAR §
> 12-46-182(h)(1).  "[P]hysical or mental
> impairments" is defined by both HAR §
> 12-46-182(h)(1) and 29 C.F.R. § 1630.2(h)(1) as
> "[a]ny physiological disorder, or condition,
> cosmetic disfigurement, or anatomical loss
> affecting one or more of the following body
> systems: . . . musculoskeletal."

<u>French v. Hawaii Pizza Hut, Inc.</u>, 105 Hawai`i 462, 467-68, 99
P.3d 1046, 1051-52 (2004).

[3] The Court notes that the ADA Amendments Act of 2008
rejected some of the requirements and standards in <u>Sutton</u> and
<u>Toyota Motor Mfg., Kentucky, Inc. v. Williams</u>, 534 U.S. 184
(2002).  The act, although altering what qualifies as a
"disability" under the ADA, did not disturb the three elements of
a prima facie case for disability discrimination set forth in
<u>Sutton</u>.  <u>See</u> Pub. L. No. 110-325, § 2(b)(2)-(5), 122 Stat. 3553,
                                        (continued...)

> case of disability discrimination under the ADA, a
> plaintiff has the burden of establishing that: (1)
> he or she is an individual with a "disability"
> within the meaning of the statute; (2) he or she
> is otherwise qualified to perform the essential
> duties of his or her job with or without
> reasonable accommodation; and (3) he or she
> suffered an adverse employment decision because of
> his or her disability.  Id. at 477-78, 481, 119
> S.Ct. 2139.

French v. Hawaii Pizza Hut, Inc., 105 Hawai`i 462, 467, 99 P.3d

1046, 1051 (2004).

The Hawai`i Supreme Court also held that the three-part

test to determine whether a plaintiff has a disability under the

ADA was relevant in a § 378-2 case "because HRS § 378-1 contains

similar language found in the ADA."  See id. (citing Bitney v.

Honolulu Police Dep't, 96 Hawai`i 243, 30 P.3d 257 (2001)).  In

Bitney, the supreme court noted:

> "The courts apply a three-part test to
> determine whether a plaintiff has an actual
> disability under the ADA.  See Colwell v. Suffolk
> County Police Dep't, 158 F.3d 635, 641 (2d Cir.
> 1998) (citing Bragdon v. Abbott, 524 U.S. 624, 632
> (1998).  First, the Court must consider whether
> plaintiff's conditions are 'physical [or mental]
> impairments' [within the meaning of the ADA]."
> Epstein [v. Kalvin-Miller], 100 F. Supp. 2d [222,]
> 225 [(S.D.N.Y. 2000)] . . . .
>                . . . .
> "The Court must next consider whether the
> life activities allegedly affected by the

---

[3](...continued)
3554.  Further, the act was effective on January 1, 2009, see
id., § 8, 122 Stat. at 3559, and does not apply retroactively.
See Becerril v. Pima County Assessor's Office, 587 F.3d 1162,
1164 (9th Cir. 2009) (per curiam).  This Court did not find any
Hawai`i case law addressing the ADA Amendments Act.

> impairment 'are "major" life activities under the
> ADA.'"  Epstein, 100 F. Supp. 2d at 225 (quoting
> Colwell, 158 F.3d at 641-42 (citing Bragdon, 524
> U.S. at 632)). . . .
>      "Finally, the Court must consider whether the
> plaintiff's impairment "substantially limits" the
> major life activity he [or she] has identified."
> Epstein, 100 F. Supp. 2d at 226.

96 Hawai`i at 251-52, 30 P.3d at 265-66 (some alterations in

original) (some citations omitted).  In light of these

similarities, the Hawai`i courts have looked to federal case law

for guidance when construing discrimination claims under Haw.

Rev. Stat. §§ 378-1 and 378-2.  See French, 105 Hawai`i at 467,

99 P.3d at 1051; see also Suzuki v. State, 119 Hawai`i 288,

297-98, 196 P.3d 290, 299-300 (Ct. App. 2008) (citing French).

     Plaintiffs, however, argue that the claims in the

instant case are distinct from the claims in the Seattle Action

because: federal case law is not binding in the interpretation of

Hawai`i civil rights laws, [Mem. in Opp. at 6 (citing Furukawa v.

Honolulu Zoological Soc'y, 85 Haw. 7, 13, 936 P.2d 643, 649 (Haw.

1997)),] the standards of proof under § 378-2 are more liberal;

and the remedies under Hawai`i law are more generous.

     While it is true that federal case law regarding the

ADA is not binding in cases involving § 378-2 claims, the cases

cited above establish that Hawai`i courts take significant

guidance from federal ADA cases.  Further, this district court

routinely considers ADA claims and § 378-2 claims together

because of the similarities between the statutory schemes and the

Hawai`i courts' use of ADA case law for guidance.  See, e.g.,

Thorn v. BAE Sys. Hawaii Shipyards, Inc., 586 F. Supp. 2d 1213,

1219 n.5 (D. Hawai`i 2008) ("The court therefore outlines a

single framework for Plaintiff's claims pursuant to the ADA and

HRS § 378-2."); Beaulieu v. Northrop Grumman Corp., 161 F. Supp.

2d 1135, 1142 n.1 (D. Hawai`i 2000) ("The Court will consider the

claims under the ADA and HRS § 378-2 together, as the Hawaii

Supreme Court looks to Federal Law to interpret state employment

discrimination law." (citations omitted)).  Thus, the fact that

federal ADA case law is not binding in § 378-2 cases does not

preclude the application of the first to file rule.

        Plaintiffs' attempt to distinguish ADA claims from §

378-2 claims by arguing the § 378-2 claim has a more liberal

standard of proof also fails.  Plaintiffs argue that, in a § 378-

2 action,

>           the Hawai`i Supreme Court expressly rejected an
>           employer's argument that it should adopt the
>           holdings of federal courts in ADA cases holding
>           that a physical lifting restriction on an
>           employee's ability to lift more than 25 pounds did
>           not constitute a limitation on a major life
>           activity.  Instead, the Hawai`i Supreme Court
>           ruled that determination of what constitutes a
>           "substantial limitation of a major life activity"
>           must be determined on a case-by-case basis under
>           Hawai`i law.

[Mem. in Opp. at 6-7 (citing French v. Haw. Pizza Hut, Inc., 105

Haw. 462, 468, 99 P.3d 1046, 1053 (Haw. 2004)).]  Plaintiffs'

reliance on French is misplaced.

The Hawai`i Supreme Court's holding was not a rejection of federal case law interpreting the ADA.  First, the Hawai`i Supreme Court noted that the federal circuits were split over the issue whether, as a matter of law, a twenty-five-pound lifting restriction constituted a disability under the ADA.  See French, 105 Hawai`i at 467-68, 99 P.3d at 1052-53.  Further, in holding that the determination of whether there is a substantial limitation on a major life activity must be made on a case-by-case basis, the Hawai`i Supreme Court cited several federal ADA cases and one Hawai`i case applying an ADA analysis to a § 378-2 claim.  See id. at 468-69, 99 P.3d at 1053-54 (citing Leicht v. Hawaiian Airlines, Inc., 77 F. Supp. 2d 1134, 1148 (D. Haw. 1999), rev'd on other grounds, 15 Fed. Appx. 552, 2001 WL 884708 (9th Cir. 2001); Sutton, 527 U.S. at 473; Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002); Bitney, 96 Hawai`i at 253, 30 P.3d at 267).  Thus, French's requirement that courts determine whether a disability substantially limits one or more major life activities on a case-by-case basis does not distinguish ADA claims from § 378-2 claims for purposes of the first to file rule.

Plaintiffs also note that Hawai`i law has more generous remedies for disability discrimination.  Plaintiffs state that there is no limit on general and punitive damages, [Mem. in Opp. at 7 (citing Haw. Rev. Stat. §§ 372-5, 368-17),] and a plaintiff

need only establish gross negligence to recover punitive damages.
[Id. (citing Ditto v. McCurdy, 98 Haw. 123, 131, 44 P.3d 274, 282
(Haw. 2002); Kang v. Harrington, 59 Haw. 652, 664, 587 P.2d 285,
293 (1978)).]  In contrast, under the ADA, a plaintiff cannot
recover non-economic damages in excess of $300,000, [id. (citing
42 U.S.C. § 1981a(b),] and must prove intentional discrimination
with malice or reckless indifference in order to recover punitive
damages.  [Id. (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526,
529-30 (U.S. 1999)).]  As noted in the reply, insofar as
Defendants only seek to stay the action, not to dismiss it,
Plaintiffs will still have the opportunity to pursue the unique
aspects of their Hawai`i law claims after the resolution of the
Seattle Action.  This Court therefore FINDS that the similarity
of the issues in the instant case and in the Seattle Action
favors application of the first to file rule.

        The Court acknowledges that, after the stay is lifted,
there will likely be significant litigation over the preclusive
effects of the rulings in the Seattle Action.  Even if the
rulings in the Seattle Action do not have preclusive effects,
staying the instant case until the resolution of the Seattle
Action still serves the interests of efficiency and judicial
economy.  If there is no preclusive effect and this district
court must revisit the legal issues ruled upon in the Seattle
Action, this district court can look to the rulings in the

Seattle Action for guidance, reducing the likelihood of inconsistent rulings.  Thus, having considered all of the relevant factors, this Court FINDS that the first to file rule applies in the instant case and that the instant case should be stayed pending the resolution of the Seattle Action.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Defendants' Motion to Stay Proceedings Pending Resolution of Earlier-Filed Federal Class Action, filed February 18, 2010, is HEREBY GRANTED.

This Court directs the Clerk's Office to administratively close this case seventeen days from the entry of this order, unless Plaintiffs seek reconsideration of this order or file an appeal of this order to the district judge.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 28, 2010.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge


**MARIA LOVELL, ET AL. V. UNITED AIRLINES, INC., ET AL; CIVIL NO. 09-00146 ACK-LEK; ORDER GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF EARLIER-FILED FEDERAL CLASS ACTION**