IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARIA LOVELL and KIMBERLY SULLIVAN, on behalf of themselves and all similarly situated class members, | ) ) ) ) | Civ. No. 09-00146 ACK-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED AIRLINES, INC., JACQUELYN SHOOK, and BERNADETTE ERWIN, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF EARLIER-FILED FEDERAL CLASS ACTION

BACKGROUND[1/]

I.    The Present Action

On March 18, 2009, Plaintiffs Maria Lovell and Kimberly Sullivan filed a class action complaint ("Complaint" or "Compl.") in the Circuit Court for the First Circuit of the State of Hawai'i against Defendants United Airlines, Inc. ("United"), Jacquelyn Shook, and Bernadette Erwin.  The Complaint alleges that on April 1, 2003, United instituted a policy and practice

---

[1/] The facts in this Order are recited for the limited purpose of deciding Plaintiffs' Appeal shall not be construed as findings of fact upon which the parties may rely in future proceedings in this case.

requiring all part-time employees to work at least thirty hours/five days per week ("Policy").  Compl. ¶ 14.

Plaintiffs were part-time employees with disabilities who worked as reservation and sales representatives at United's reservation center in Honolulu, Hawai'i.  Id. ¶¶ 3-4, 12, 28. They indicated to United that they could not work thirty hours/five days per week.  Id. ¶¶ 15, 30.  Shook and Erwin were employed with United as supervisors and took part in the implementation of the Policy against Plaintiffs.  Id. ¶¶ 26, 35. Unable to comply with the Policy, Lovell retired "involuntarily" on April 3, 2003, and Sullivan's employment was terminated on May 26, 2008.  Id. ¶¶ 16, 32.

Plaintiffs claim that United's Policy violates Hawai'i Revised Statutes ("HRS") § 378-2 in Count I of the Complaint and that it offends the express public policy of the State of Hawai'i in Count II.  Id. ¶¶ 47, 55.  They assert that Shook and Erwin acted as United's agents and aided and abetted in the implementation of the Policy, in contravention of the statute and state public policy.  Id. ¶¶ 26, 35.  Plaintiffs seek to advance these claims on behalf of themselves, as well as all others similarly situated.  Id. ¶ 38.[2]

_____

[2] In addition, the Complaint alleges that Lovell was issued a right-to-sue letter by the Hawai'i Civil Rights Commission. Compl. ¶ 22.  On August 3, 2005, United offered to reinstate Lovell to active employment and to accommodate her disability by
(continued...)

On April 6, 2009, Defendants removed the case to this
Court.  Doc. No. 1.  They asserted that the Court has
jurisdiction under the Class Action Fairness Act of 2005
("CAFA"), which is codified in relevant part at 28 U.S.C.
§ 1332(d)(2).  On April 8, 2009, Plaintiffs filed a Motion to
Remand.  Doc. No. 6.  On August 18, 2009, Magistrate Judge Leslie
E. Kobayashi issued a findings and recommendation to deny
Plaintiffs' motion to remand ("8/18/09 F&R").  Doc. No. 32.
Judge Kobayashi concluded that Plaintiffs had fraudulently joined
Shook and Erwin, as no actionable claim was stated against those
Defendants.  8/18/09 F&R 7-11.  She therefore determined that
Shook's and Erwin's citizenship should not be considered for
purposes of determining diversity.  Id. at 7-11.  She found that
the citizenship of the remaining opposing parties was diverse, as
Plaintiffs are citizens of the State of Hawai'i and United is a
citizen of the State of Illinois.  Id. at 6-7.  She further
determined that the amount in controversy exceeds $75,000.  Id.

---

2/(...continued)
allowing her to work 20 hours per week.  Id. ¶ 23.  However,
United refused to rescind its Policy, which Lovell understood was
still in effect and being applied to hundreds of disabled United
employees.  Id.  Lovell rejected the offer because United did
nothing to alleviate the effects of its alleged discrimination
against her disabled former co-workers.  Id. ¶ 24.  Plaintiffs
claim that United retaliated against Lovell for her opposition to
its Policy when it demanded that she waive her claims against the
carrier to stop its allegedly unlawful discrimination and refused
to reinstate her without the condition that she do so, knowing
that she would not accept that condition to re-employment and
forcing her to take unwanted retirement as a result.  Id.

at 6.   Accordingly, Judge Kobayashi found that the Court has diversity jurisdiction and recommended that Plaintiffs' motion for a remand be denied.  Id. at 12.  Because she found the Court has diversity jurisdiction, Judge Kobayashi declined to address whether the Court has jurisdiction under CAFA.  Id. at 11–12.

On October 2, 2009, this Court adopted the Magistrate Judge's Findings and Recommendation to Deny Plaintiff's Motion for Remand to State Court ("10/2/09 Order").  Doc. No. 38.  On October 9, 2009, Plaintiffs appealed the 10/2/09 Order to the Ninth Circuit.  Doc. No. 39.  On February 10, 2010, the Ninth Circuit dismissed the appeal for lack of jurisdiction and denied Plaintiff's request for an extension of time to file an application for permission to appeal.  Doc. No. 45.

On February 18, 2010, Defendant filed a Motion to Stay Proceedings Pending Resolution of Earlier-Filed Federal Class Action ("Motion").[3/]  Doc. No. 46.  On March 16, 2010, Plaintiffs filed a memorandum in opposition (doc. no. 52), and on March 22, 2010, Defendant filed its reply (doc. no. 56).  In opposition to the motion to stay, Plaintiffs also filed a Supplemental Declaration on April 1, 2010 (doc. no. 57) and a Second

---

[3/] Although they still appear on the pleadings, because this Court has found that defendants Jacquelyn Shook and Bernadette Erwin were fraudulently joined and Plaintiffs did not state an actionable claim against them (see 10/2/09 Order) and for ease of reference in this Order, the Court will refer to the remaining Defendant, United, in the singular form.

4

Supplemental Declaration on April 8, 2010 (doc. no. 59).  On
April 5, 2010, Magistrate Judge Kobayashi held a hearing on
Defendant's Motion.  <u>See</u> Doc. No. 58.

On April 28, 2010, Magistrate Judge Kobayashi granted
Defendant's Motion ("4/28/10 Order").  Doc. No. 61.  On May 13,
2010, Plaintiffs appealed the 4/28/10 Order to the district judge
("Plaintiffs' Appeal").  Doc. No. 62.  On May 27, 2010, Defendant
filed a Memorandum in Opposition to Plaintiffs' Appeal from the
Magistrate Judge's Order Granting Defendants' Motion to Stay
Proceedings Pending Resolution of Earlier-Filed Federal Action
("Opposition").

## II.  The Seattle Action

On September 28, 2006, the Equal Employment Opportunity
Commission ("EEOC") filed a complaint in the Western District of
Washington against United Airlines, Inc.  <u>See</u> <u>Equal Employment</u>
<u>Opportunity Commission v. United Airlines, Inc.</u>, Case No. C06-
01407 TSZ (W.D. Wash) (the "Seattle Action").  In that action,
the EEOC alleges, <u>inter</u> <u>alia</u>, that United violated the Americans
with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA"), by failing
to provide reasonable accommodations for the charging parties and
similarly situated individuals who could not work a minimum of
thirty hours and five days per week.  Seattle Compl. ¶ 8.

Plaintiff Maria Lovell is one of the charging parties
in the Seattle Action.  Seattle Compl. ¶¶ 2, 7.  In the Seattle

Action, the EEOC requests, <u>inter</u> <u>alia</u>, injunctive relief to
enjoin Defendant from failing to accommodate qualified employees'
disabilities and appropriate relief to make whole the charging
parties and similarly situated individuals by providing
compensation for past pecuniary losses and appropriate back pay
and benefits.  Seattle Compl. Prayer for Relief ¶¶ A, C, D.

**STANDARD OF REVIEW**

Pursuant to Local Rule 74.1, any party may appeal from
a magistrate judge's order determining a non-dispositive pretrial
matter or, if a reconsideration order has issued, the magistrate
judge's reconsideration order on such a matter.  The district
judge shall consider the appeal and shall set aside any portion
of the magistrate judge's order found to be clearly erroneous or
contrary to law.  <u>See</u> Local Rule 74.1; <u>see</u> <u>also</u> 28 U.S.C. §
626(b)(1)(A); Fed. R. Civ. P. 72(a).  The district judge may also
reconsider <u>sua</u> <u>sponte</u> any matter determined by a magistrate
judge.  <u>See</u> Local Rule 74.1.

"The clearly erroneous standard applies to the
magistrate judge's factual findings while the contrary to law
standard applies to the magistrate judge's legal conclusions,
which are reviewed de novo." <u>Columbia Pictures, Inc. v. Bunnell</u>,
245 F.R.D. 443, 446 (C.D. Cal. 2007).  Under the "clearly
erroneous" standard, the magistrate judge's ruling must be
accepted unless, after reviewing the entire record, this Court is

"left with the definite and firm conviction that a mistake has been committed." United States v. Silverman, 861 F.2d 571, 576-77 (9th Cir. 1998) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).  The district judge may not simply substitute his or her judgment for that of the magistrate judge.  See Grimes v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991).  "'A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard.'" Na Pali Haweo Cmty. Ass'n v. Grande, 252 F.R.D. 672, 674 (D. Haw. 2008).

Motions to stay are non-dispositive motions and thus are reviewed under the clearly erroneous and contrary to law standard of review.  Sylvester v. Menu Foods, Inc., Civ. No. 07-00409 ACK-KSC, 2007 WL 4291024, *2 (D. Haw. Dec. 05, 2007) (citing Torrance v. Aames Funding Corp., 242 F. Supp. 2d 862, 864 (D. Or. 2002)); see also McClelland v. Merck & Co., Civ. No. 06-00543 JMS-BMK, 2007 WL 178293, *2 (D. Haw. Jan. 19, 2007).

**DISCUSSION**

I.   **The First-to-File Rule**

The "first-to-file" rule (also called the "first-filed" or the "prior pending action" rule) dictates that, in the absence of "exceptional circumstances," the later-filed action should be stayed, transferred, or dismissed with leave to plead the counterclaims in the prior pending action.  See Pacesetter Sys.,

<u>Inc. v. Medtronic, Inc.</u>, 678 F.2d 93, 94-95 (9th Cir. 1982)
("There is a generally recognized doctrine of federal comity
which permits a district court to decline jurisdiction over an
action when a complaint involving the same parties and issues has
already been filed in another district."); <u>Church of Scientology
of California v. United States Dept. of Army</u>, 611 F.2d 738,
749-50 (9th Cir. 1979) ("[T]he doctrine of federal comity [is] a
discretionary doctrine which permits one district to decline
judgment on an issue which is properly before another district .
. . . The purpose of the comity principle is of paramount
importance.  The doctrine is designed to avoid placing an
unnecessary burden on the federal judiciary, and to avoid the
embarrassment of conflicting judgments . . . .  '[T]he first to
file rule normally serves the purpose of promoting efficiency
well and should not be disregarded lightly.'"); <u>EEOC v. Univ. of
Pennsylvania</u>, 850 F.2d 969, 972 (3d Cir. 1988) (first-to-file
rule should not be departed from except in cases of "rare or
extraordinary circumstances, inequitable conduct, bad faith, or
forum shopping").

        In applying the first-to-file rule, "a court looks at
three threshold factors: (1) the chronology of the two actions;
(2) the similarity of the parties[;] and (3) the similarity of
the issues." <u>Z-line Designs, Inc. v. Bell'O Int'l LLC</u>, 218
F.R.D. 663, 665 (N.D. Cal. 2003) (citing <u>Alltrade, Inc. v.</u>

Uniweld Prod., Inc., 946 F.2d 622, 625-26 (9th Cir. 1991);

Pacesetter Sys., 678 F.2d at 95) (other citations omitted).  The

parties and issues in the two litigations do not need to be

identical, but do need to be substantially similar.  See, e.g.,

Club Vista Fin. Serv., LLC v. Maslon Edelman Borman & Brand, LLP,

No. Cv. 10-0412-PHX-GMS, 2010 WL 2231926, *6 (D. Ariz. June 02,

2010) ("In addressing these factors, the parties and the issues

need not be identical."); Biotronik, Inc. v. Guidant Sales Corp.,

No. 09-442-KI, 2009 WL 1838322, *2 (D. Or. June 22, 2009) ("The

parties and issues need not be exactly identical; there may be

additional parties and the issues need only be 'substantially

similar.'"); Adoma v. University of Phoenix, Inc., No. Civ. S-10-

0059 LKK/GGH, 2010 WL 1797263, *4 (E.D. Cal. May 3, 2010) (same).

The first-to-file rule may be applicable even where the remedy

sought is different, provided that the underlying legal issues

are the same or substantially similar.  See id. at *5 (citing

Pacesetter as "finding that the first-to-file rule [was]

applicable where 'two actions differ only as to the remedy

sought,' but the underlying legal issues were the same"); see

also Isle Capital Corp. v. Koch Carbon, Inc., No. 06-00525 MMC,

2006 WL 823186, *3 (N.D. Cal. Mar. 28, 2006) (holding "the form

of relief sought does not determine the 'similitude' of the

issues").[4]

## II.  Magistrate Judge Kobayashi's Decision

Magistrate Judge Kobayashi examined the relevant factors set forth above and concluded that the first-to-file rule applies in this case; thus, she stayed this action pending resolution of the Seattle Action.  4/28/10 Order at 24.  Judge Kobayashi found that the chronology of the two actions favored the first-to-file rule.  Id. at 14.  The EEOC filed the Seattle Action on September 28, 2006, and Plaintiffs filed the instant case on March 18, 2009.  Id.  The first phase of the Seattle Action is currently scheduled for trial in October of this year, while the Rule 16 Scheduling Conference in this case was scheduled for May 14, 2010 and has not yet occurred because of

---

[4] The Court rejects Plaintiffs proposed standard that "a stay should only issue in cases where the conditions that would permit claim and issue preclusion are met: (1) identity of parties; (2) identity of issues; and (3) fair opportunity to participate in the prior proceeding.  If such conditions are not all met, there is insufficient basis for a stay."  Plaintiffs' Appeal at 10.  Plaintiffs do not cite any authority for this proposed standard.  Id. (arguing broadly that "the cases warrant rejecting Defendants' motion and that a stay should issue only in cases where the conditions that would permit claim and issue preclusion are met.").  This is not the standard that has been set forth and accepted in the Ninth Circuit.  Moreover, in examining EEOC and private party lawsuits, the Supreme Court has held that "the statute specifically grants the EEOC exclusive authority over the choice of forum and the prayer for relief once a charge has been filed.  The fact that ordinary principles of res judicata, mootness, or mitigation may apply to EEOC claims does not contradict these decisions, nor does it render the EEOC a proxy for the employee."  EEOC v. Waffle House, Inc., 534 U.S. 279, 298 (2002).

Judge Kobayashi's 4/28/10 Order staying this matter.  Id.; see
April 29, 2010 Entering Order (vacating the Rule 16 Scheduling
Conference).

        Judge Kobayashi next found that although there are some
differences between the parties in this case and the Seattle
Action, there is sufficient similarity to warrant application of
the first-to-file rule.  4/28/10 Order at 16.  Judge Kobayashi
noted that, although the EEOC is the plaintiff in the Seattle
Action, it is litigating claims on behalf of various United
employees and former employees ("EEOC Claimants").  Id. at 14.
Judge Kobayashi rejected Plaintiffs' argument that certain
putative class members' claims are not at issue in the EEOC
lawsuit because United disputes the viability of those claims.
Id. at 15.  She explained that just because United disputes the
validity of certain claims does not mean they are not at issue.
Judge Kobayashi specifically noted that United disputes Plaintiff
Kimberly Sullivan's claim, but she was granted permission to
intervene in the Seattle Action and thus her claim would clearly
have been at issue.  Id.

        Finally, Judge Kobayashi found the similarity of the
issues in the Seattle Action and in this case favors the first-
to-file rule.  Id. at 23.  Judge Kobayashi observed that the
claims in the Seattle Action are based primarily on the ADA and
the claims in this case are based primarily on Haw. Rev. Stat. §

                                11

378-2.  Id. at 17.   Judge Kobayashi further explained that Hawai'i courts have recognized that the ADA and Hawai'i disability discrimination laws are similar and the Hawai'i Supreme Court has expressly adopted the ADA elements of a prima facie case as the elements of a prima facie H.R.S. § 378-2 case. Id. at 17-19 (citing French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 467, 99 P.3d 1046, 1051 (2004)).   Judge Kobayashi rejected Plaintiffs' arguments that the claims in this case are distinct from the Seattle Action because federal case law is not binding in the interpretation of Hawai'i civil rights laws, the standards of proof under H.R.S. § 378-2 are more liberal, and the remedies under Hawai'i law are more generous.   Id. at 20-23.

As this Court must review the Magistrate Judge's Order to determine whether there is clear error or whether it is contrary to law, the Court will now examine each factor in turn.

**III. Analysis of the First-to-File Factors**

A.   Chronology

The Court agrees with Magistrate Judge Kobayashi; the chronology of these two actions clearly favors application of the first-to-file rule.   The Seattle Action was filed on September 28, 2006, almost two-and-a-half years prior to this action, which was filed on March 18, 2009.   The Seattle Action is also scheduled for trial this fall, whereas a Rule 16 Scheduling conference has not even been held in this case.

B.    Identity of the Parties

Magistrate Judge Kobayashi found that there is sufficient similarity between the parties in this case and the parties in the Seattle Action to warrant application of the first-to-file rule.  4/28/10 Order at 16.  This Court agrees.

Plaintiffs repeatedly assert that they "are not parties in the EEOC case."  Plaintiffs' Appeal at 10-12 (Section A "The Plaintiffs are Not Parties in the EEOC Case") and 15-19 (Section C "EEOC is pursing the Government's Claims, not Individual Plaintiffs' and Plaintiffs are not parties in the EEOC case").  Plaintiffs' argument that they are not plaintiffs in the Seattle Action is not persuasive for three reasons.  First, Maria Lovell is a charging party in the Seattle Action and a charging party is prevented from bringing an independent lawsuit to enforce her or her ADA rights.  Second, Maria Lovell, Kimberley Sullivan, and Jeanna Dela Cruz were permitted to intervene in the Seattle Action and Maria Lovell and Kimberly Sullivan did file a complaint in intervention and participated for almost two years in the Seattle Action.[5/]  Third, the narrow class of persons who are part of the proposed class in this action and who would not be covered by the Seattle Action does not differentiate the

---

[5/] In the Seattle Action, Plaintiff's attorney in this case, Carl Varady, applied to appear pro hac vice on behalf of Plaintiffs on April 24, 2008, and Plaintiffs' notice of voluntary dismissal was filed on March 6, 2010.

parties sufficiently to warrant disregarding the first-to-file rule.

        1.   <u>Maria Lovell is a charging party in the Seattle Action and accordingly is prevented from bringing an independent ADA claim based upon her charge</u>

First, Maria Lovell is a charging party in the Seattle Action. This means that the EEOC is pursuing a charge that she made against her employer (referred to as the respondent under the statute). Under 42 U.S.C. § 2000e-5(f)(1) (Title VII, § 706(f)(1)), the Commission is empowered to bring a civil action against any respondent if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the EEOC. Accordingly, even disregarding Maria Lovell and Kimberly Sullivan's intervention in the Seattle Action, while they are not named plaintiffs there, the EEOC is pursuing their claims. The EEOC is permitted to bring a suit in "its own name for the purpose, among others, of securing relief for a group of aggrieved individuals." <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279, 324 (2002). Indeed, as Plaintiffs acknowledge, charging parties are prevented from pursuing their own individual lawsuits if the EEOC has filed a civil action based upon their charges. <u>See</u> Plaintiffs' Appeal at 17 (noting that the "Supreme Court has further explained that an ADA plaintiff-employee has no independent cause of action in the circumstance where EEOC initiates suit after investigation and conciliation, but the

14

employee may intervene in the EEOC's suit") (citing <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279,291 (2001)).  In <u>EEOC v. Waffle House</u>, the Supreme Court explained:

> Once a charge is filed . . . . [t]he EEOC has exclusive jurisdiction over the claim for 180 days. During that time, the employee must obtain a right-to-sue letter from the agency before prosecuting the claim.  If, however, the EEOC files suit on its own, the employee has no independent cause of action, although the employee may intervene in the EEOC's suit.

<u>Id.</u> at 291 (citing 42 U.S.C. §2000e-5(f)(1)(1994 ed.)  In its conclusion in <u>EEOC v. Waffle House</u>, the Supreme Court reiterated "the statute specifically grants the EEOC exclusive authority over the choice of forum and the prayer for relief once a charge has been filed."  <u>Id.</u> at 298.  Thus, given the EEOC's statutory authority to pursue Plaintiffs' federal discrimination claims, the Court finds Plaintiffs' argument that they are not plaintiffs in the Seattle Action not as persuasive as it would be in the absence of such a statutory and regulatory framework.

The Court further rejects Plaintiffs' argument that the EEOC is only interested in injunctive and declaratory relief. Plaintiffs' Appeal at 4-5.  In the Seattle Action, the EEOC seeks both injunctive and declaratory relief as well as relief "to make whole Charging Parties and similarly situated individuals." Seattle Compl. Prayer for Relief ¶¶ C-E.  Thus, the EEOC is seeking compensatory, victim-specific relief.

The Court is similarly unpersuaded by Plaintiffs' assertions that the EEOC is hostile to individual employees' claims, that the EEOC is not vigorously representing the interests of employees affected by a policy it asserts is illegal, that the "EEOC is working directly to limit the scope of relief available to disabled [United] employees affected by [United's] unlawful policy," and that the EEOC and United have been discussing settlement of the case without the individual employees' participation.  Plaintiffs' Appeal at 4-5, 15-17.

As Plaintiffs' themselves cited, the Supreme Court has explained that:

> The EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged.  The individual victim is given his right to intervene for this very reason.  The EEOC exists to advance the public interest in preventing and remedying employment discrimination, and it does so in part by making the hard choices where conflicts of interest exist.

See Plaintiffs' Appeal at 17 (citing General Tel. Co. v. EEOC, 446 U.S 318, 331 (1980)).  Accordingly, the EEOC is permitted to discuss settlement and relief independently.  See also General Tel., 446 U.S. at 326 ("the aggrieved person may bring his own action at the expiration of the 180-day period of exclusive EEOC administrative jurisdiction if the agency has failed to move the case along to the party's satisfaction [i.e. by filing suit], has reached a determination not to sue, or has reached a conciliation

or settlement agreement with the respondent that the party finds

unsatisfactory.")[6/]

    2.    Maria Lovell and Kimberly Sullivan were permitted
          to intervene in the Seattle Action

        Second, Maria Lovell and Kimberly Sullivan were

permitted to intervene in the Seattle Action, but only as

individuals—their request to intervene as putative class members

was denied.  See Seattle Action Doc. No. 100 (July 16, 2008

Minute Order granting in part and denying in part motion to

intervene); Seattle Action Doc. No. 136.  The Seattle Court's

July 16, 2008 Minute Order indicated that Ms. Lovell and Ms.

Sullivan were to electronically file and serve any complaint in

intervention within ten (10) days of the date of that order.  See

Seattle Action Doc. No. 100.

        Plaintiffs did not file an intervenor complaint within

ten days as directed, but rather sought reconsideration in

various ways and then appealed the denial of Jeanna Dela Cruz's

motion for intervention.  On June 5, 2009, Maria Lovell and

Kimberly Sullivan finally filed a complaint in intervention.

Seattle Action Doc. No. 173.  On July 6, 2009, the Seattle Court

---

        [6/] Although General Tel. involved a lawsuit under a
provision of Title VII of the 1964 Civil Rights Act, as the
Supreme Court has noted, "Congress has directed the EEOC to
exercise the same enforcement powers, remedies, and procedures
that are set forth in Title VII of the Civil Rights Act of 1964
when it is enforcing the ADA's prohibitions against employment
discrimination on the basis of disability."  Waffle House, 534
U.S. at 285.

reconsidered its earlier ruling with respect to Ms. Dela Cruz and granted her leave to intervene.  Seattle Action Doc. No. 200 ("July 6, 2009 Seattle Order").  In that order, the Seattle Court also struck Ms. Lovell and Ms. Sullivan's motion for class certification as improper and admonished them that "inclusion of the phrase 'on behalf of themselves and all similarly situated class members,' following their names, in the captions placed on pleadings, briefs, or other documents filed in this case, is inappropriate."  July 6, 2009 Seattle Order at 5.

On December 7, 2009, the Seattle Court set February 4, 2010, as a deadline for motions to intervene.  Seattle Action Doc. No. 200.  On February 4, 2010, Plaintiffs' counsel filed a Second Motion for Leave to File a Complaint In Intervention, on behalf of twenty-two (22) plaintiff-intervenors.  Seattle Action Doc. 219.  On February 26, 2010, the Seattle Court set the hearing on that motion for March 12, 2010, and requested that plaintiff-intervenors' reply brief address whether the proposed plaintiff-intervenors satisfied the definition of "claimant," which was set forth in that order.  Seattle Action Doc. No. 249 at 10.  On March 6, 2010, plaintiff-intervenors Maria Lovell, Kimberly Sullivan, and Jeanna Dela Cruz filed a notice of voluntary dismissal.

Accordingly, Plaintiffs in this action were, for a time, plaintiff-intervenors in the Seattle lawsuit.  Their notice

18

of dismissal, filed in the Seattle Action on March 6, 2010, was filed just two weeks after Defendant filed its Motion to Stay in this case.  In light of the foregoing procedural history, the Court finds that Plaintiffs' argument that they are not plaintiffs in the Seattle Action unpersuasive.  It appears the only reason that they are no longer plaintiffs in that action is because they filed a voluntary notice of dismissal after the Defendant moved for a stay in this case.

3.    <u>The narrow class of persons who are part of this proposed class but who would not be covered by the Seattle Action does not differentiate the parties sufficiently to warrant disregarding the first-to-file rule</u>

The Court is also not persuaded by Plaintiffs' argument that "it is unclear how, when EEOC acknowledges it is seeking relief for only 10 of 28 potential claimants, the parties are 'similar enough' to warrant treating the cases as the same and staying the instant action."  Plaintiffs' Appeal at 12. Plaintiffs do not provide any citation to support this argument. Plaintiffs do make the same argument earlier in their brief and cite to the Declaration of Carl M. Varaday ¶ 11; however, there is no ¶ 11 included in the Declaration of Carl M. Varaday dated March 16, 2010, that was submitted in support of Plaintiffs' Appeal.

Although Plaintiffs did not provide this Court with a copy of any of the moving papers submitted to Magistrate Judge

Kobayashi, the Court has reviewed the Supplemental Declaration of Carl M. Varaday, which was submitted to Magistrate Judge Kobayashi on April 1, 2010 (doc. no. 57).[7/]  This declaration also does not have a ¶ 11, however, the e-mail attached to that declaration indicates that at least 17 EEOC Claimants are located in Hawai'i and the Court concludes, based on Mr. Varaday's declaration, up to 23 members of the proposed class here may be covered by the Seattle Action.  Mr. Varaday declares that United disputes that 23 proposed class members are proper claimants in the Seattle Action.  Supplemental Declaration ¶ 7.  However, as discussed supra, and as Magistrate Judge Kobayashi explained, just because United disputes they are proper claimants does not mean that their claims will not be at issue.  See 4/28/10 Order at 15-16.  United appears to dispute Ms. Sullivan's claim, yet she was permitted to intervene and thus her claim would clearly have been at issue.  Accordingly, because 17-23 of 28 putative class members may have claims at issue in the Seattle Action, the Court finds that there is sufficient identity of the parties to warrant application of the first-to-file rule.

---

[7/] The Court observes that Local Rule 74.1 directs that the "party appealing a magistrate judge's non-dispositive order shall provide the district judge with two courtesy copies of all briefs, exhibits, and orders relevant to the appeal."  Local Rule 74.1.

4.   Plaintiffs' arguments regarding discovery are not relevant to application of the first-to-file rule

Finally, this Court also rejects Plaintiffs' arguments regarding their alleged inability to conduct discovery in the Seattle Action.  Plaintiffs' Appeal at 8-9.  As Judge Kobayashi explained, "a full and fair opportunity to conduct discovery in the Seattle Action is not a prerequisite to a stay in the instant case."  4/28/10 Order at 16-17.  Moreover, had Plaintiffs not voluntarily withdrawn from the Seattle Action they would have had the opportunity to participate in discovery.

5.   Summary regarding identity of the parties

In light of the foregoing, the Court finds that there is sufficient identity of the parties to warrant application of the first-to-file rule.

C.   Identity of the Issues

Although the claims in the Seattle Action are primarily based on the ADA, and claims in this action are primarily based on Haw. Rev. Stat. § 378-1, Magistrate Judge Kobayashi examined these claims and concluded that similarity of the issues favors application of the first-to-file rule.  4/28/10 Order at 23, 17. The Court finds Magistrate Judge Kobayashi's examination of the similarities between ADA and Hawai'i disability law to be thorough and well-reasoned.  The Hawai'i courts have recognized that the ADA and Hawai'i disability discrimination laws are similar, and the Hawai'i Supreme Court has expressly adopted the

21

ADA elements of a prima facie case as the elements of a prima facie case under H.R.S. § 378-2.  See French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 467, 99 P.3d 1046, 1053 (2004).  In French, the Hawai'i Supreme Court explained:

> The Hawai'i statutes and HAR prohibiting discrimination based on disability are textually similar to the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101.  Because of the similarities between the ADA and our own HRS chapter 378, we adopt the analysis for establishing a prima facie case of disability discrimination under HRS § 378-2 that was established in Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).  In Sutton, to establish a prima facie case of disability discrimination under the ADA, a plaintiff has the burden of establishing that: (1) he or she is an individual with a "disability" within the meaning of the statute; (2) he or she is otherwise qualified to perform the essential duties of his or her job with or without reasonable accommodation; and (3) he or she suffered an adverse employment decision because of his or her disability.  Id. at 477-78, 481, 119 S.Ct. 2139.
>
> As to the determination of "disability," HRS § 378-1, similar to the ADA, defines disability as "the state of having a physical or mental impairment, which substantially limits one or more major life activities."  See 42 U.S.C. § 12102(2) (defining disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual").  Hence, a "physical or mental impairment" is a disability if the impairment "substantially limits" a "major life activity." HRS § 378-1.

French, 105 Hawai'i at 467, 99 P.3d at 1051 (footnotes omitted).[8/]  The Hawai'i Supreme Court further explained that the

_____

[8/] As Judge Kobayashi explained, the ADA Amendments Act of 2008 ("ADAAA") rejected some of the requirements and standards in Sutton and Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002).  See 4/28/10 Order at 18 n.3.  The ADAAA, (continued...)

three-part test developed to determine whether a Plaintiff meets the disability requirement under the ADA was relevant in a §378-3 case because "HRS § 378-1 contains similar language found in the ADA. Id. Accordingly, Hawai'i courts have looked to interpretations of analogous federal laws by the federal courts for guidance when deciding discrimination claims under H.R.S. §378-1 and §378-2. Id.; see also Suzuki v. State, 119 Hawai'i 288, 297-98, 196 P.3d 290, 299-300 (App. 2008) (citing French).

Plaintiffs acknowledge that "Hawai'i courts can look to federal case law for guidance in cases of first impression interpreting Hawaii civil rights statutes." Plaintiffs' Appeal at 13 (citing Shoppe v. Gucci Am., 94 Haw. 368, 377, 14 P.3d 1049, 1058 (Haw. 2000)). However, they further argue "a federal court's interpretation of federal law 'is not binding on this court's interpretation of civil rights laws adopted by the Hawai'i legislature.'" Plaintiffs' Appeal at 13 (citing Furukawa v. Honolulu Zoological Soc'y, 85 Haw. 7, 13, 936 P.2d 643, 649

---

[8]/(...continued)
although altering what qualifies as a "disability" under the ADA, did not disturb the three elements of a prima facie case for disability discrimination set forth in Sutton. See Pub. L. No. 110-325, § 2(b)92)-(5), 122 Stat. 3553, 3554. Additionally, the ADAAA did not take effect until January 1, 2009, see id., § 8, 122 Stat. at 3559, and does not apply retroactively. See Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009) (per curiam). Furthermore, Magistrate Judge Kobayashi did not find any Hawai'i case law addressing the ADA Amendments Act, neither party cited any in their papers appealing the Magistrate Judge's Order, and this Court has not found any.

(Haw. 1997))).   Magistrate Judge Kobayashi rejected this argument finding that <u>French</u> and <u>Suzuki</u> establish that the Hawaiʻi courts take significant guidance from federal ADA cases.   4/28/10 Order at 20.   Judge Kobayashi further observed that this district has examined ADA and H.R.S. § 378-2 claims together.   <u>Id.</u> (citing <u>Thorn v. BAE Sys. Hawaii Shipyards, Inc.</u>, 586 F. Supp. 2d 1213, 1219 n.5 (D. Haw. 2008) ("The Court therefore outlines a single framework for Plaintiff's claims pursuant to the ADA and HRS § 378-2"); <u>Beaulieu v. Northrop Grumman Corp.</u>, 161 F. Supp. 2d 1135, 1142 n.1 (D. Haw. 2000) ("The Court will consider the claims under the ADA and HRS § 378-2 together, as the Hawaii Supreme Court looks to Federal Law to interpret state employment discrimination law." (citations omitted)).   Thus, Judge Kobayashi held that the fact that federal ADA case law is not binding in H.R.S. § 378-2 cases does not preclude application of the first-to-file rule.   <u>Id.</u> at 21.   This Court agrees.

Plaintiffs have not been able to distinguish either <u>Thorn</u> or <u>Beaulieu</u> in which courts considered both federal ADA claims and state H.R.S. § 378-2 claims under a single framework. Further, Plaintiffs attempt to rely on <u>Furukawa v. Honolulu Zoological Soc'y</u> is unsuccessful.   85 Haw. 7, 13, 936 P.2d 643, 649 (Haw. 1997).   In <u>Furukawa</u>, the Hawaiʻi Supreme Court again reiterated that it looks to federal decisions for guidance and indicated only that federal employment discrimination authority

is not necessarily persuasive where a state's statutory provision differs in relevant detail.  For example, in <u>Furukawa</u>, the Hawai'i Supreme Court noted that employment discrimination law in Hawai'i applies to all employers no matter how small, whereas federal law applies only to employers with 15 or more employees. <u>Id.</u>  The Hawai'i Supreme Court then considered a Sixth Circuit case in determining that a plaintiff had to prove that all of the relevant aspects of his employment situation were similar to those employees with whom he seeks to compare his treatment.

Plaintiffs also argue that <u>French</u> "must be considered as a clear attempt to keep Hawai'i law distinct from the ADA. Whether the distinctions are major or minor is less important than that the Hawai'i court refuses to adopt federal civil rights law wholesale."  Plaintiffs' Appeal at 14.  Judge Kobayashi found that Plaintiffs' reliance on <u>French</u> is misplaced and this Court agrees.

The Hawai'i Supreme Court's holding in <u>French</u> was not a rejection of federal case law interpreting the ADA.  First, the Hawai'i Supreme Court noted that the federal circuits were split over the issue of whether, as a matter of law, a twenty-five-pound lifting restriction constituted a disability under the ADA. <u>See</u> <u>French</u>, 105 Hawai'i at 467-68, 99 P.3d at 1052-53. Furthermore, in holding that the determination of whether there is a substantial limitation on a major life activity must be made

on a case-by-case basis, the Hawai'i Supreme Court cited several
federal ADA cases and one Hawai'i case applying an ADA analysis
to a § 378-2 claim.  See id. at 468-69, 99 P.3d at 1053-54 citing
Leicht v. Hawaiian Airlines, Inc., 77 F. Supp. 2d 1134, 1148 (D.
Haw. 1999), rev'd on other grounds, 15 Fed. Appx. 552, 2001 WL
884708 (9th Cir. 2001); Sutton, 527 U.S. at 473; Toyota Motor
Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002); Bitney v.
Honolulu Police Dep't, 96 Hawai'i 243, 253, 30 P.3d 257, 267
(2001).  Accordingly, the Court does not find that French
demonstrates a clear attempt to keep Hawai'i law distinct from
the ADA such that a claim under the Hawai'i discrimination law
raises issues sufficiently distinct from an ADA claim so as to
prevent application of the first-to-file rule.

        Plaintiffs also argue that other case law involving an
application of the first-to-file rule demonstrates that these
actions are sufficiently dissimilar such that the first-to-file
rule should not apply.  The Court is not persuaded by Plaintiffs'
reliance on Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765
(9th Cir. 1997).  Plaintiffs argue that Cedars-Sinai "is
instructive as it permitted two closely parallel actions, one a
False Claims Act case against a hospital for false billing and
one filed [against] the hospital for a declaration that [certain]
claims were legitimate, both to proceed."  Plaintiffs' Appeal at
10.  As the Ninth Circuit in Cedars-Sinai explained, "the issue

26

in this declaratory action is whether the HCFA's 1986 rule was validly promulgated.  The issue in the Seattle qui tam case is whether any of the Hospitals knowingly submitted false claims for payment." Cedars-Sinai, 125 F.3d at 769.  Thus, the two cases in Cedars-Sinai required resolution of differing legal issues. Here, both lawsuits involve the issue of whether the same United policy was discriminatory.

Furthermore, because these cases address very similar issues, and because Hawai'i takes guidance from federal discrimination law, the Seattle Action may have preclusive effects in this litigation and, in any event, will certainly help guide this litigation and potential settlement of this litigation.  One example is that the resolution of whether any claims are barred by United's bankruptcy discharge may have collateral estoppel effects here.

Finally, Plaintiffs also assert that Magistrate Judge Kobayashi "downplayed the significance of the remedies available in the present case, from those in the ADA." Plaintiffs' Appeal at 14.  Plaintiffs argue that in Hawai'i there are no limitations on general and punitive damages and that Plaintiffs can recover on punitive damages on proof of gross negligence.  Id. (citing H.R.S. § 372-2 & 368-17, Ditto v. McCurdy, 98 Haw. 123, 131, 44 P.3d 274, 282 (Haw. 2002), Kang v. Harrington, 59 Haw. 652, 664, 587 P.2d 285, 293 (1978)).  In contrast, Plaintiffs argue that

27

remedies under the ADA are limited to non-economic damages of $300,000 and punitive damages only in cases in which the employer has engaged in intentional discrimination and has done so "with malice or with reckless indifference to federally protected rights of an aggrieved individual." Id. (citing 42 U.S.C. § 1981a(b), Kolstad v. ADA, 527 U.S. 526, 529-530 (1999)).

Judge Kobayashi found:

> As noted in the reply, insofar as Defendants only seek to stay the action, not to dismiss it, Plaintiffs will still have the opportunity to pursue the unique aspects of their Hawai'i law claims after resolution of the Seattle Action. This Court therefore FINDS that the similarity of the issues in the instant case and in the Seattle Action favors application of the first to file rule.

4/28/10 Order at 22-23. The Court agrees. Further, the first-to-file rule may be applicable even where the remedy sought is different, provided that the underlying legal issues are the same or substantially similar. See Adoma v. University of Phoenix, Inc., No. Civ. S-10-0059 LKK/GGH, 2010 WL 1797263, *4 (E.D. Cal. May 3, 2010) at *5 (citing Pacesetter as "finding that the first-to-file rule [was] applicable where 'two actions differ only as to the remedy sought,' but the underlying legal issues were the same"); see also Isle Capital Corp. v. Koch Carbon, Inc., No. 06-00525 MMC, 2006 WL 823186, *3 (N.D. Cal. Mar. 28, 2006) (holding "the form of relief sought does not determine the 'similitude' of the issues."). In any event, as Judge Kobayashi and Defendant noted, "insofar as Defendants only seek to stay the action, not

to dismiss it, Plaintiffs will still have the opportunity to
pursue the unique aspects of their Hawai'i law claims after
resolution of the Seattle Action."[9/]  4/28/10 Order at 23.

Accordingly, the Court finds that the issues in the
Seattle Action and in this action are sufficiently similar to
warrant application of the first-to-file rule.

### CONCLUSION

Plaintiffs' Appeal is denied.  The Magistrate Judge's
Order Granting Defendants' Motion to Stay Proceedings
Pending Resolution of Earlier-Filed Federal Class Action is
affirmed.  This case shall remain stayed until resolution of the
Seattle Action.

---

[9/] Furthermore, while Plaintiffs argue that the remedies
under Hawai'i law are more generous, the Court observes that both
Hawai'i courts and others have compared "reckless indifference"
and "gross negligence."  Cf. Pancakes of Haw., Inc. v. Pomare
Props. Corp., 85 Hawai'i 286, 293, 944 P.2d 83, 90 (Haw. App.
1997) (noting that gross negligence has been defined as
"[i]ndifference to a present legal duty and utter forgetfulness
of legal obligations so far as other persons may be affected"
(internal citation and quotation omitted)); Royal Ins. Co. of Am.
v. Southwest Marine, 194 F.3d 1009, 1015 (9th Cir. 1999)
(internal citation and quotation omitted) (explaining gross
negligence "is simply a point on a continuum or probability, and
its presence depends on the particular circumstances of each
case"); see also Apache Bohai Corp. LDC v. Texaco China BV, 480
F.3d 397, 406 (5th Cir. 2007) (explaining "public policy
precludes enforcement of contract clauses exonerating a party
from its reckless indifference to the rights or others, whether
or not termed gross negligence") (internal citation omitted);
Abney v. Coe, 493 F.3d 412, 421 n.2 (4th Cir. 2007) (noting that
under North Carolina law "gross negligence requires, at a
minimum, 'reckless indifference to the rights of others.'")
Accordingly, Plaintiffs have not clearly established that Hawai'i
law is more generous regarding punitive damages.

IT IS SO ORDERED.

DATED: Honolulu, Hawai‘i, July 26, 2010.



_____
Alan C. Kay
Sr. United States District Judge

Lovell v. United Airlines, Inc., Civ. No. 09-00146 ACK-LEK: Order Affirming Magistrate Judge's Order Granting Defendants' Motion to Stay Proceedings Pending Resolution of Earlier-Filed Federal Class Action.